Next case is Aquawood, trading as ToyQuest v. WorldSlide, LLC. I want to bring up the Supreme Court case of Microsoft v. I4I because if this district court decision stands, it pretty much invalidates the Supreme Court, which tried to deal with the issues here, which is fact, law, what's the presumption. Well, first of all, you're not entitled. The examiner held you, and you didn't attempt to refute it, the filing date of the parent. They're quite different disclosures and different claims. They're quite different, and part of it, Your Honor, is my client changed attorneys. But more importantly is one of the reasons you have the whole idea of a continuation in part is that you want the best mode top, and things change. But if the claims of the so-called CIP are not supported by the earlier application, then you don't get the benefit of the earlier application. That's true. That's true. Therefore, wasn't there an admission that prior to the date more than a year before the filing of the second application, there was a public use of the invention? He needs the benefit of the earlier filing date, Your Honor. But the point I wanted to make was the procedure for deciding what that priority is is set forth in the manual, the MPEP, and the examiner uses that. You're not bound by the manual. Yes. We look at the references. We look at the procedure. We look what the examiner did and what you didn't refute. Well. So citing the MPEP, which you continually did in your brief, doesn't settle the issue. I understand, but the analysis that you should use, because if you have a continuation in the manual, obviously not all the things get the benefit of the earlier date, only the things that are common, if the essence of the invention was in the earlier patent. And the earlier idea was that you could find a material that you could use wet and dry and with a friction coefficient that made it useful under both conditions, so that when it's hot, you add water because it makes it more comfortable, and when it's colder, you don't. That's sort of the idea my client came up with. And the whole market got there after he made this disclosure and came up with this invention. If I understand the dates here, you're contending for the earlier priority date, in this case, the critical date, would be, under the earlier priority date, would be June 24, 1998. Is that correct? Yes. All right. Now, there's material in the summary judgment proceedings, including the declaration of Steve Gray, that says the inflatable 2000 was sold as early as, and I think the purchase agreement here, which is at 582 of the appendix, was sold as of June 1, 1998. Okay. Even if you're right, even if you're right about the critical date, doesn't that sale invalidate your patent if the inflatable 2000 is prior, is governing prior and anticipating prior? That was challenged in the summary judgment. When you say that, which part of that? In the summary judgment, when it took to Gray, we pointed out that the invoice did not apply. It wasn't right as to the weight, it wasn't right as to the material, and all of that. And that should have been done by trial, not by summary judgment. So you say that Gray's invoice does not demonstrate the sale of the inflatable 2000? It was not for the right slide. Yes. It was pointed out in the summary judgment that, on its face, it was invalid. It just isn't the same slide. It was a commercial slide, and that's what he was selling. He did not sell the type of slide that would have invalidated this that early. It just isn't. Do you agree that the inflatable 2000 would anticipate your claims? It's a ball pit slide. It was one of the products they sold. They didn't sell it until later. But yes, if it had been sold earlier, yes. But the slide that they sold had two parts. They had a dry feature and a wet feature, and you changed the way it ended. You had a ball pit that you put balls in, or you didn't need that, because you didn't need that if you used it dry. It was a different slide. He sold a number of products. He sold, I believe it was large inflatable slides, and I think they were all wet, but he didn't sell a dry. I'm just saying, we took that on in the summary judgment motion. That was challenged. Where was the infringement here? Is it correct that AquaWood did not make or sell any of the accused devices that its business was promotion and marketing and giving advice development? Well, we presented to the judge their own website where they said they were partners with Walmart, Target, and the others. I'm assigned to the judge. They filed an infringement suit to enforce a contract they had where they said they were manufacturers. I don't know how you deal with a judge who simply says, you may challenge the declaration, but we're going to take it at its face value. I think the inventor always has a problem. You can always find more art, especially when it's a matter of pulling parts together. That's why I cited the windshield wiper case and the time release capsule under the arm. These were inventions that anticipated a future market. Going back to low friction, I have problems with the judge saying, one, you're not definite enough, and the other is, it's anticipated and obvious. They're inconsistent. If it's obvious, then your obvious were definitely enough because you taught it if it's obvious. Low friction is something for the Patent Office's side, not individual judges. Can I return just one more time to the Inflatable 2000? Yes. Do you agree that if you're incorrect with respect to the priority date that the Inflatable 2000 anticipates and invalidates your patent? I'm saying that if gray... If I understand your question, I'm not trying to play semantics. If gray had testified truthfully that that was a correct invoice, yes. We would have a problem. Assume though that the priority date is not the 1998, or the critical date is not the 1998 date, but is the later date that was found by the court to be the priority date. Does Inflatable 2000 invalidate your patent on anticipation grounds under the later critical date? I forget. I don't think so, because I don't think they actually sold it before the year before. I'm not absolutely sure about that, but I know that we challenged that declaration, and it was clear, and we gave several points as to weight, size, lack of the number of parts that had to be sold with the invoice. It was not an invoice for that particular ball pit slide, and I don't know how to deal with that other than you have a trial, or the judge reads the declarations that you provide, or looks at the declaration with a critical eye. In fact, there were two summary judgment motions, and at the first summary judgment motion, he denied it. And Gray didn't change his declaration. The only substantive change between the first summary judgment motion, and the second was the declaration by this Chinese gentleman, who says, I compared the language, but he doesn't know patent law, he didn't apply any kind of critical path that you would have at the patent office. And I grant that judges are forced to look at facts and all, but that's why you have trials too, or you should have trials, and not necessarily do it for summary judgment, because clearly, we took on, my client filed a declaration that took in all the points of Yang and said it's not correct. And the way to sort that out is with the trial, not with summary judgment. I also point out that low friction is not mentioned in claims 18 to 20, I think it's 24, of the patent. The judge, throughout the whole validity of the entire patent, all claims on the fact that he found low friction to be indefinite. And I, you know, we're inventors, I mean, low friction obviously varies between what you're doing. Low friction for the purpose of a doorstep is much different than if you're trying to use the ball bearings on a bicycle or something of that nature.  I think you take people out and you say, are you having fun? I think that's, I mean, I don't think you gain anything by saying, what's, I mean, you take ten people and you let them slide, and you have them, and hopefully they're using dairy, different bathing suits or materials. I mean, that's, the consumer kind of makes that up. I don't think you gain anything by saying, well, it's, I don't even know, I forget what the factors are. I mean, I would assume that generally the speed with which you come down the slide, which I guess would be generally correlated with whether you're having fun, at least for kids. Well, Lindsey Vonn wouldn't be the person I'd want to have. Let me finish the question. Yes. The speed would be, I guess, inversely proportional to the angle and the degree of the friction, right? Right. Obviously, the steeper... The steeper, the faster. Yes. Assuming the same degree of friction. Right. The friction is the angle. If you lower the friction, you can lower the angle, right? And still have the same speed. Right. So that leaves us wondering what low friction means, since you can achieve the same speed with surfaces varying significantly in friction. Yeah, but I don't think you gain anything by defining that factor, unless you're also defining how long you're going to make the length of the slide. And you could also, I guess, make a slide that was steep at the start and less steep at the end, which is what you find on playgrounds sometimes. What you gain is satisfying Section 112. Well, the essence here was the idea that you said, we've now come far enough. Just as with the windshield wiper, the variable speed windshield wiper, someone came up and said, hey, now we have capacitors, we have the parts over here, we have the windshield wiper over here, let's bring them together. Because when you think about it, in World War II Jeeps, they had the guy with the little, you had a handle. Well, here's my problem, the bottom line of all this about the angles and the friction and so forth, is if I'm manufacturing a slide, and I go to your patent and I say, I don't want to infringe this patent, how do I, I'm going to have a, not a low friction surface, I'm going to have a higher friction surface. How do I know when I've got a higher friction surface that doesn't infringe your patent, if I have a slide that works, that kids enjoy? Except that that really isn't a right that all people have. When the person came up with the pill, the time-release pill, all it said is, you put a pill, it releases over time. The drug manufacturers didn't have the right to say, well, you've got to tell me more so I can figure out how to get around your patent. So you're saying that I'm out of luck, and therefore if I have a slide that works, that kids enjoy, it infringes. I'm saying that if you've gotten the benefit of my invention, which is a wet, there are now materials available that you can make a wet-side slide, a wet-dry slide, you should compensate me because I disclosed to the public. I didn't keep that secret. I suggested that we do this. And you're saying, no, no, you always have to give people an out. To achieve the same result, and that's not the law. Which is to say, low friction isn't really a limitation in your claim. Well, it isn't a limitation to all the claims, but the idea was that you could have a versatile slide, and now we have the materials over here, and I'm the one who suggests the first person, and this is the patent office, who made this decision. They're the people. And as counsel earlier said, you can't use hindsight to go back and say, boy. I mean, when you think about Edison, when he started... Mr. Bernhard, you wanted to say some rebuttals? Yes. Thank you. We'll give you two minutes. Mr. Lobin. Good morning, Your Honors. May it please the Court. My name is Steve Lobin from the Eclipse Group, here arguing on behalf of the Apple of the Applewood. There are many issues that the Court has touched on just now with opposing counsel, but in essence, this was a straightforward case, a patent case below, and the resolution of this appeal also should be relatively straightforward. Can I ask you, interrupt your presentation just to ask you to focus in, if you would, on the question that I asked your opposing counsel about the Gray Declaration and the purported sale of an inflatable 2000 device on June, I think 6th it was, June 1st of 1998. What does the record show as to whether there is a dispute, a fact as to whether that was a sale of the anticipating inflatable 2000 device? It's a little unclear how Judge Walter assessed the factual dispute. However, Mr. Gray presented a declaration that recited facts testifying to the dates of the sale of certain prior art products, the features of those products, the features of which read on the claims, rendering them invalid under either scenario, whether it was entitled to only the priority of its filing or whether it was entitled to going back to the parent application. The invoice that Mr. Bernheim, his principal critique factually of Mr. Gray's evidence was an additional piece of evidence that Mr. Gray provided through his declaration to make a strong case even stronger. That was his evidence that there was a sale that occurred prior to the critical date. Assume the critical date is June 24th, 1998. So how do we know there is, Mr. Bernheim says there is a dispute of fact as to whether that invoice represents a sale of the device that we now, and the district court was talking about as being anticipated, the inflatable 2000 device. How do we know that was a sale of that device and not, as Mr. Bernheim says, a sale of a very different device? Well, several answers. First, because Mr. Gray's testimony says that it was a sale of that device, with or without the invoice. So Mr. Bernheim criticizing one of many pieces of evidence could put a dent in the evidentiary showing. However, that dent, even if it was a dent, doesn't render any less probative the showing of invalidity based on Mr. Gray's testimony and the documents that were submitted with his declaration, which the district court, in its role as deciding whether there was a reasonable factual issue to present to a jury, found in his order, they had not done. That there was no reasonable factual dispute that a jury must decide, for many reasons, including that a critique of the invoice wasn't sufficient enough to raise a reasonable trial issue. So, the district court granted summary judgment to Aquilwood on three separate invalidity grounds, as well as three separate non-infringement grounds. Each of those rulings should be affirmed, not only because each is factually and legally correct, but because Appellant Worldslide fails to establish any error of law or fact, much less six errors. The principle, what I gleaned from the briefing from Appellant Worldslide, as a legal matter, was their critique based on Microsoft. It was, frankly, the only legal discussion I found in the briefing. And, of course, Microsoft, I'm quite confident the court is familiar, dealt with, the Supreme Court was dealing with Microsoft's challenge to the clear and convincing standard for proving patent invalidity. And the court didn't deal with priority issues, it certainly didn't create a new test, which, my opponent suggests, is now the law, that the district court sits in the shoes of a reviewing court, reviewing what the PTO did, and having a new requirement that the district court find some error in the PTO's evaluation of the prior art. That's not the law. It certainly wasn't something that was established by Microsoft. The Supreme Court and Microsoft just said the clear and convincing standard is what it is. If there was art that the PTO evaluated, certainly the presumption of validity is strong. If there is art that was unsighted art, that fact is relevant to how strong that presumption is, but the presumption is still in place. That's the essence of Microsoft. There was no holding regarding the other points that were briefed by my opponent. So that's as to the law. As to the facts, the district court gave a very thorough analysis. The fact that we went through summary judgment twice, the only indication of that, having been there, was that Judge Walter thought it may be helpful to him to have some expert testimony. That was what was added in the record. The district court recited the appropriate law. At A8, the district court indicated there's a presumption of validity for all patents. There's a clear and convincing standard to invalidate a patent. The district court proceeded to apply that presumption and apply that standard and look at the facts of record and see if there was a triable issue of fact. He found that there wasn't. Of course, the most pertinent issues, I think, or the most interesting issues here, are the indefiniteness issue and the invalidity issue. In no small part because my client does not want to face another suit when a new line of products comes out from this patent. I wanted to address those first. Certainly, the indefiniteness issue, which is addressed at 32 and 33 of our briefing. The district court looked to analogous cases, not maybe on all fours factually, but we've got the long case, the bowling case, the SOI tech case. Was there an admission that the invention was publicly disclosed before the key date, assuming the second application didn't get the benefit of the first? Absolutely. Absolutely. Not only was that admission made in the deposition that I took of the inventor, that admission was also made by counsel in his briefing to the court below and in his briefing to this court. Why is it clear the second application wasn't entitled to the benefit of the first priority date? Well, I think as Your Honor alluded to in your questioning, the district court has an obligation when issues of priority are raised to look at, to apply the test for priority. And apply the burden of proof, which is on the patentee. And so WorldSlide actually had the burden of proof to show an earlier priority date. And the district court, utilizing the evidence of record, including the expert declaration, looked at the claims of the child application and the disclosure of the patent application to see if there was support for those claims in that prior disclosure. The court found none. In addition, there was evidence from the file history, from the prosecution history, that WorldSlide contends that there's evidence that the patent office left the priority. There was no such evidence. In fact, the only evidence that's probative of the priority issue from the file history was the patent office's specific statement that the child application was not entitled to priority of the parent. And later in the prosecution, the patent office applied as prior art a reference, which would not have been prior art, had the patent office considered that application to enjoy the priority of the earlier application. Mr. Bernheim, a number of times mentioned the MPEP. Asserting that that should have been followed and it wasn't followed and it contaminated the proceedings. Would you address that, please? Well, you know, I think the Supreme Court may have discussed, and I didn't go back last night and review the Microsoft case, but I'm familiar with it and I'm sure his quotes are correct that the Supreme Court discussed the MPEP and how the MPEP is used by the patent office and the role of the MPEP in adding gloss to this court's pronouncements and assisting district courts in claim construction and analysis of prior art. But certainly, as cited in our briefing below, the MPEP does not enjoy the force of law. The MPEP adds detail for the benefit of patent examiners who are trying to apply the law of this court in analyzing issues that they're presented with every day of matching prior art to proposed claims in patent applications. So to hang one's hat on the MPEP before this court cannot carry the day. As I mentioned, the concession was made throughout this case in the record below and in the briefing that if priority is not accorded to the parent application, the claims of the patent suit are invalid on sale bar 102B and public disclosure by the applicant himself prior to the critical date. Concerning anticipation, there are some references in the brief to... It was a long prosecution history. There's a lot to go through. There were certain statements by the applicant about an earlier date of conception, some drawings. The invalidity case here was 102B. We don't deal with the dates of invention. It's not important, the dates of conception. What matters here is the filing dates of those two applications and whether the later gets the benefit of the earlier. So documents talking about dates of conception or whether something... A document created by the applicant discloses the features in the claims of the child application has no bearing here. Several of the issues presented for appeal my opponent didn't present any argument for error that I could find. For instance, the obviousness determination. The district court made a determination based on the record before him that in addition to being anticipated, the patent was obvious. I didn't find any critique based on law or fact in the briefing that appellant asserts that was error. So I think that argument has been waived and even if there's success on all of the other issues at the very least, the patent remains obvious. Just to clarify about the wet-dry issue the applicant patentee has asserted throughout this case that the invention was the ability to have slides that function wet or dry. The patent office disagreed. The claims that issued have nothing to do with wet or dry. It's a low friction surface. The issue of no infringement by the accused products was based on holding the applicant to that concession and stopping the applicant from having this patent be construed any more broadly than what he claims it is, which is a wet-dry only wet-dry products can infringe. So the point was made and the record is clear below that the accused products are water slides. On that basis, the judge found as an additional ground for the summary judgment that these products could not be infringed. Just addressing the indefiniteness issue I think Judge Tricin had a hypothetical about the steepness of the slide and what constitutes low friction. I think that besides the analogs to the relevant cases of finding indefiniteness in those instances that are analogous to this, you've got a situation where a low friction sliding surface depends on the angle of the surface and at a steep enough angle, I suppose even sandpaper could be a low friction sliding surface. Or some other surface that normally would act resistively, but perhaps with whatever surface is under your bottom or whatever surface perhaps matches with that it can turn a resistive surface into a sliding surface at a high angle. Another point to be made on the indefiniteness issue the applicant certainly could have made these claims definite by including something in the specification that addressed a coefficient of friction. It's been a while, but I know my engineering courses at Virginia taught me about coefficients and all the Greek terms that left that limitation out, which is I think effectively what your opposing counsel says is the significance of that limitation that really just means something that allows sliding. Which is indefinite because we don't know how steep or what the coefficient is. No, but I think if he's correct in saying that low friction just means something that will enable sliding then we have a definition of low friction and it may be that the term doesn't have any particular limiting effect on the patent, but it has meaning. I'd be glad to address, but I'm out of time. It's alright. You are, Mr. Loban, and I think Judge Bryson is satisfied. Thank you very much. We'll give Mr. Bernheim two minutes for rebuttal. Thank you, Your Honor, for the two minutes. It's an interesting situation. I think Microsoft had to deal with a company that improved its software and Microsoft said, well, you can't give us the earlier version of your software and it appeared that for whatever reason they had destroyed one of the earlier versions and then they approved the fact that the inventors could come in and say this is what the earlier version was. The case is very enlightening in terms of the burden of proof is on the infringer, you might say, not the inventor. The inventor has gained something by coming forth, as they say, spilling his guts for the benefit of the advancement of the art and that maybe we owe them something. Perhaps not in this case, but I think we do because this did advance the art and the proof of that is, in fact, today you can buy these slides that are good wet and dry and the consciousness of guilt that I pointed out in the appeal that all they say is if you want to use it on a dry day don't hook up the hose, but they don't say it's wet or dry. There's the acknowledgement that they are in fact doing that. I just think this is going to send a chilling effect to inventors because they're saying you can't rely on anything the patent office does because all the infringer needs to do is go to a district court find some piece of prior art Microsoft and the MPE piece talks about you're not obligated to list every piece of art you look at at the patent office. They cited the re-examination procedure which was available to this infringer. If they thought they had this great art of I think you have to make a decision of who has the burden of proof and what was the intent of Congress in clear and convincing a higher burden. Thank you, Mr. Bernheim. We have your argument. We'll take the case under submission.